UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHARLES DOUGLAS,

     Plaintiff,

vs.

MICHIGAN BELL TELEPHONE COMPANY
d/b/a A T & T,

     Defendant.

---

## **COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff, CHARLES DOUGLAS, by and through his attorneys, TERESA J. GORMAN, PLLC, for his Complaint, states:

### **JURISDICTION AND PARTIES**

1.    This suit is brought pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq*., the Americans With Disabilities Act, as amended, 42 U.S.C. § 12101, *et seq*., the Family Medical Leave Act, 29 U.S.C. § 2601, *et seq.*, the Elliott-Larsen Civil Rights Act, MCL § 37.2101 *et seq*., and the Persons With Disabilities Civil Rights Act, MCL § 37.1201 *et seq.*

2.     This court has jurisdiction pursuant to 42 U.S.C. § 2000e-5, 28 U.S.C. § 1331, and 28 U.S.C. §1367(a).

3.     Plaintiff is a citizen of the United States and resides in Westland, Michigan.

4.     Defendant is a Michigan corporation doing business throughout Michigan.

5.     Plaintiff was Defendant's employee within the meaning of Title VII of the Civil Rights Act of 1964, as amended, 42 USC § 2000e *et seq.*, the Americans With Disabilities Act, as amended, 42 U.S.C. § 12101, *et seq.*, the Family Medical Leave Act, 29 U.S.C. § 2601, *et seq.*, the Elliott-Larsen Civil Rights Act, MCL § 37.2101 *et seq.*, and the Persons With Disabilities Civil Rights Act, MCL § 37.1201 *et seq.*

6.     Defendant meets all of the requirements for employer status under Title VII of the Civil Rights Act of 1964, as amended, 42 USC § 2000e *et seq.*, the Americans With Disabilities Act, as amended, 42 U.S.C. § 12101, *et seq.*, the Family Medical Leave Act, 29 U.S.C. § 2601, *et seq.,* the Elliott-Larsen Civil Rights Act, MCL § 37.2101 *et seq.*, and the Persons With Disabilities Civil Rights Act, MCL § 37.1201 *et seq.*

7.     The amount in controversy exceeds $75,000.00, exclusive of interest, costs, and attorney fees.

8.     The events giving rise to this cause of action occurred in Commerce Township, Michigan, in the Eastern District of Michigan.  Accordingly, venue lies in the United States District Court for the Eastern District of Michigan under 28 USC §1391(b).

## STATEMENT OF FACTS

9.     Plaintiff incorporates by reference paragraphs 1-8.

10.     Plaintiff was hired by Defendant in January 2002 as a full time service representative and collection representative.

11.     Plaintiff performed the job duties of a service representative and collection representative in a diligent manner and received positive evaluations and raises.

12.     Plaintiff is a 50 year old African American male.

13.     Plaintiff has suffered from asthma for many years.

14.     Plaintiff's asthma is a disabling condition under the Americans With Disabilities Act, as amended, and the Persons With Disabilities Civil Rights Act, in that it affects major bodily functions, including but not limited to, breathing.

15.     Throughout his career with Defendant, Defendant had various asthma-related medical leaves of absences, including intermittent leave, approved by Defendant and/or covered by the Family Medical Leave Act.

16.     In early 2018, Defendant closed the department in which Plaintiff had been assigned since 2002 and outsourced the service and collection representative job duties.

17.     Despite having no prior technical training or experience whatsoever, Plaintiff assigned to the Digital Entertainment Group as a Customer Service Specialist (Installation and Maintenance) while most of his former co-workers were reassigned to non-technical positions.

18.     Plaintiff's new job duties as a Customer Service Specialist (Installation and Maintenance) including working inside and outside in connection with maintaining and providing telephone service, repairing and maintaining outside cable facilities and premises service wires, as well as numerous other technical job duties.

19.     Training for the Customer Service Specialist (Installation and Maintenance) position includes classroom training.

20.     Plaintiff had no prior experience in or classroom training for the position of a Customer Service Specialist (Installation and Maintenance).

21.     Once reassigned to the Customer Service Specialist (Installation and Maintenance) position, Defendant did not provide Plaintiff with the requisite training but directed Plaintiff to learn the job by shadowing an experienced technician.

22.     When Plaintiff requested training, Defendant placed in him "refresher courses" not designed for new technicians but for those with some experience.

23.     When Plaintiff failed to perform his new job duties correctly due to lack of training, he was disciplined for poor performance.

24.     In October 2019, Plaintiff was transferred to the position of a technician in Technical Field Services ("TFS").

25.     Plaintiff was the only African American out of 14 TFS technicians.

26.     Plaintiff's supervisor in TFS was Bruce Downey, a Caucasian male ("manager Downey").

27.     The required training for technicians in TFS includes classroom training including basic installation training, basic repair training, TFS new hire training, and frame basic training.

28.     Plaintiff had no prior experience in or classroom training for the position of a TFS technician.

29.     Once reassigned to the Customer Service Specialist (Installation and Maintenance) position, Defendant did not provide Plaintiff with the requisite training but again directed Plaintiff to learn the job by shadowing an experienced technician.

30.     All of Plaintiff's similarly situated Caucasian co-workers had undergone TFS training but the training was denied to Plaintiff.

31.     When Plaintiff complained to manager Downey, his complaints were met with intimidation, ridicule and disciplinary action.

32.     Once manager Downey learned of Plaintiff's disability and his need for intermittent FMLA leave, manager Downey intensified his discriminatory treatment of Plaintiff.

33.     From October 2019 to March 2020, Plaintiff required intermittent FMLA leave due to his disability.

34.     From October 2019 to March 2020, Defendant did not provide Plaintiff with the necessary training and was instructed to learn the job simply by shadowing experienced technicians.

35.     In October 2019, Plaintiff attended two "refresher" courses which did not provide any sensible instruction to Plaintiff as he had not had the introductory courses that were allegedly being refreshed.

36.     From October 2019 to March 2020, manager Downey continued to discipline Plaintiff for poor performance and fabricated infractions.

37.     On March 4, 2020, Plaintiff had an in-person meeting with his union representatives, Mark Kowalski and Dave Patterson, and Defendant's General Manager, Maurice Winfield, with TFS manager Downey participating remotely by telephone.

38.     The purpose of the March 4, 2020 meeting was to establish an action plan to get Plaintiff standard classroom training.

39.     At this meeting, manager Downey, with expressed hostility, agreed to seek out and schedule the necessary training for Plaintiff.

40.     Immediately after the meeting, Plaintiff, on his own, accessed the AT&T University website and signed up for the basic repair and TRS courses, two of the courses needed to ensure Plaintiff's success.  Downey refused to sign off on it and the training was again denied

41.     Plaintiff continued to work only by shadowing experienced TFS technicians.

42.     On March 9, 2020, Plaintiff was exposed to COVID 19 at a customer's home and began displaying symptoms that evening.

43.     On March 10, 2020, Plaintiff was admitted to the hospital where he stayed overnight.

44.     From March 11, 2020 to March 14, 2020, Plaintiff was on FMLA leave due COVID 19.

44.     On March 15, 2020, Plaintiff commenced the standard medical leave that Defendant provided to its employees with COVID 19.

45.     Plaintiff remained on COVID 19 medical leave until May 13, 2020.

46.     When Plaintiff returned from COVID 19 medical leave on May 13, 2020, he was met with another written reprimand from manager Downey falsely accusing Plaintiff of not completing required training by some phantom "due date."

47.     From May 2020 to August 2020, manager Downey continued to deny Plaintiff the requisite training and directed Plaintiff to learn the job by continuing to shadow other TFS technicians.

48.     In late August 2020, manager Downey directed Plaintiff to work on his own without an experienced technician and still without the requisite training.

49.     For the ensuing months, manager Downey continued to subject Plaintiff to discipline, including unpaid suspensions, citing poor performance and time sheet issues that were not Plaintiff's fault.

50.     Plaintiff continued to request training and his requests were denied.

50.     In December 2020, manager Downey suspended Plaintiff again for poor performance.

51.     In January 2021, Plaintiff, under duress and in need of paychecks, returned to work under a Back to Work Agreement which did not include the much-needed and oft-requested classroom training but did include ten (10) more ride-along training days with experienced TFS technicians.

52.     On January 4, 2021, the first of the ten (10) days of ride-along training, Plaintiff was shadowing experienced TFS technician Andy Kozicki, a Caucasian.

When Plaintiff and Mr. Kozicki had completed the assigned jobs by 3:45pm (45 minutes ahead of the normal quitting time), Mr. Kozicki told Plaintiff that he was heading home and gave Plaintiff permission to do the same. Plaintiff did so. Later that day, manager Downey called Plaintiff, screaming that Plaintiff was wrong to leave.

52.     The next day, on January 5, 2021, Mr. Kozicki explained to manager Downey that he had told Plaintiff to head home the day before. Manager Downey then subjected Plaintiff to written discipline and verbal harassment, but did not subject Mr. Kozicki to any discipline. Plaintiff continued to shadow Mr. Kozicki on this day as well as the next day, January 6, 2021.

53.     On January 7 and 8, 2021, Plaintiff's asthma flared up and he was unable to work. Out of FMLA time, Plaintiff took company-approved vacation days while he addressed his disability.

54.     When Plaintiff returned to work on Saturday, January 9, 2021, manager Downey was off work. Andy Kozicki advised Plaintiff that the remaining seven (7) days of ride-along training were no longer available to him per manager Downey.

55.     For the next two months, Defendant continued to deny Plaintiff the requisite training and continued to subject Plaintiff to discipline when he made mistakes and was unable to perform certain of his job duties.

56.     In March 2021, Defendant terminated Plaintiff for poor performance.

57.     On June 3, 2021, Plaintiff file a charge of race and disability discrimination with the Equal Employment Opportunity Commission,

58.     On October 20, 2021, the Equal Employment Opportunity Commission issued a right-to-sue letter to Plaintiff.

59.     This litigation is filed within ninety (90) days of Plaintiff's receipt of his right-to-sue letter.

**COUNT I**
**RACE DISCRIMINATION**
**IN VIOLATION OF**
**TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED**

60.     Plaintiff incorporates by reference paragraphs 1-59.

61.     During Plaintiff's employment with Defendant, Defendant, through its employees, agents, and representatives, intentionally discriminated against Plaintiff in the terms and conditions of employment based on unlawful consideration of race.

62.     During Plaintiff's employment with Defendant, Defendant, through its employees, agents, and representatives, treated Plaintiff differently from similarly situated non-African American employees in the terms and conditions of employment.

63.     Plaintiff was subjected to race discrimination by Defendant, by and through its employees, agents, and representatives, said acts being made unlawful by Title VII of the Civil Rights Act of 1964, as amended.

64. Defendant, by and through its employees, agents, and representatives, violated Title VII of the Civil Rights Act of 1964, as amended, by the following acts:

a. subjecting Plaintiff to racially discriminatory conduct and discipline;

b. denying Plaintiff job opportunities that were provided to his non-African American peers;

c. limiting, segregating, or classifying Plaintiff in a way which deprived or tended to deprive Plaintiff of an employment opportunity or otherwise adversely affecting the status of Plaintiff because of his race;

d. disciplining, discharging and otherwise discriminating against Plaintiff with respect to his employment, compensation, or a term, condition or privilege of employment, because of his race.

65. Defendant, by and through its employees, agents, and representatives, were predisposed to discriminate on the basis of race and acted in accordance with that predisposition.

66. Defendant, by and through its employees, agents, and representatives, treated Plaintiff and other African American and minority employees differently from similarly situated non-African American employees in the terms and conditions of employment, based on unlawful consideration of race.

67.     Defendant's actions were intentional and with reckless indifference to Plaintiff's rights and sensibilities.

68.     If Plaintiff had been non-African American, he would not have been treated in the manner recounted above.

69.     As a direct and proximate result of Defendant's wrongful acts and omissions, Plaintiff has sustained loss of earnings, earning capacity, and fringe benefits and has suffered mental anguish, physical and emotional distress, and humiliation and embarrassment.

**COUNT II**
**RACE DISCRIMINATION**
**IN VIOLATION OF**
**THE ELLIOTT-LARSEN CIVIL RIGHTS ACT**

70.     Plaintiff incorporates by reference paragraphs 1-69.

71.     During Plaintiff's employment, Defendant, through its employees, agents, and representatives, intentionally discriminated against Plaintiff and other African American employees in the terms and conditions of employment based on unlawful consideration of race.

72.     During Plaintiff's employment, Defendant, through its employees, agents, representatives, treated Plaintiff and other African American employees differently from similarly situated non-African American employees in the terms and conditions of employment.

73.     Plaintiff was subjected to race discrimination by Defendant, by and through its agents, servants, employees and customers, said acts being made unlawful by the Elliott-Larsen Civil Rights Act.

74.     Defendant, by and through its agents, servants, and employees, violated the Elliott-Larsen Civil Rights Act by the following acts:

        a.      subjecting Plaintiff to racially discriminatory conduct and discipline;

        b.      denying Plaintiff job opportunities that were provided to his non-African American peers;

        c.      limiting, segregating, or classifying Plaintiff in a way which deprived or tended to deprive Plaintiff of an employment opportunity or otherwise adversely affecting the status of Plaintiff because of his race;

        d.      disciplining, discharging and otherwise discriminating against Plaintiff with respect to his employment, compensation, or a term, condition or privilege of employment, because of his race.

75.     Plaintiff's employment was terminated by Defendant in whole or in part because of his race.

76.     Defendant, by and through its agents, representatives, and employees, was predisposed to discriminate on the basis of race and acted in accordance with that predisposition.

77.    Defendant, by and through its agents, representatives, and employees, treated Plaintiff differently from similarly situated Caucasian employees in the terms and conditions of employment, based on unlawful consideration of race.

78.    Defendant's actions were intentional, with reckless indifference to Plaintiff's rights and sensibilities.

79.    If Plaintiff had been Caucasian, he would not have been treated in the manner described.

80.    As a direct and proximate result of Defendant's wrongful acts and omissions, Plaintiff has sustained loss of earnings, earning capacity, and fringe benefits and has suffered mental anguish, physical and emotional distress, humiliation and embarrassment.

### COUNT III
### DISABILITY DISCRIMINATION
### IN VIOLATION OF
### THE AMERICANS WITH DISABILITIES ACT, AS AMENDED

81.    Plaintiff incorporates by reference paragraphs 1-80.

82.    At all relevant times, Plaintiff was an individual with a disability within the meaning of the American With Disabilities Act, As Amended. Specifically, Plaintiff has a physical or mental impairment that substantially limits one or more of his major life activities, has a record of the impairment, and/or is regarded by Defendant has having the impairment.

14

83.     Defendant, through its employees, agents, and representatives, denied Plaintiff's request for reasonable accommodations.

84.     Defendant, through its employees, agents, and representatives, failed to engage in the interactive process in good faith.

85.     Defendant's decision to deny Plaintiff's requests for a reasonable accommodation due to his disability, constitutes discrimination against Plaintiff with respect to the terms, conditions, and/or privileges of employment in violation of the Americans With Disabilities Act.

86.     When Plaintiff returned from his medical leaves, Defendant, through its employees, agents, and representatives, intentionally discriminated against Plaintiff in the terms and conditions of employment because he is an individual with a disability within the meaning of the American With Disabilities Act, As Amended.

87.     During Plaintiff's employment, Defendant, through its employees, agents, representatives, treated Plaintiff differently from similarly situated non-disabled employees in the terms and conditions of employment because he is an individual with a disability within the meaning of the American With Disabilities Act, As Amended.

88.     Defendant's decision to treat Plaintiff differently from similarly situated non-disabled employees because he has a record of an impairment

constitutes discrimination against Plaintiff in respect to the terms, conditions and/or privileges of employment in violation of the American With Disabilities Act, As Amended.

89.    Defendant's decision to treat Plaintiff differently from similarly situated non-disabled employees because Defendant regarded Plaintiff as disabled constitutes discrimination against Plaintiff in respect to the terms, conditions and/or privileges of employment in violation of the American With Disabilities Act, As Amended.

90.    In March 2021, Defendant terminated Plaintiff's employment.

91.    Defendant's decision to terminate Plaintiff because, in part, he has a record of an impairment constitutes discrimination against Plaintiff in respect to the terms, conditions and/or privileges of employment in violation of the American With Disabilities Act, As Amended.

92.    Defendant's decision to terminate Plaintiff because, in part, it regarded Plaintiff as disabled constitutes discrimination against Plaintiff in respect to the terms, conditions and/or privileges of employment in violation of the American With Disabilities Act, As Amended.

93.    The actions of Defendant and its agents, representatives, and employees were intentional in disregard to rights and sensibilities of Plaintiff.

94.     As a direct and proximate result of Defendant's wrongful acts and omissions, Plaintiff has sustained loss of earnings, earning capacity, and fringe benefits and has suffered mental anguish, physical and emotional distress, humiliation and embarrassment.

**COUNT IV**
**DISABILITY DISCRIMINATION**
**IN VIOLATION OF**
**THE PERSONS WITH DISABILITIES CIVIL RIGHTS ACT**

95.     Plaintiff incorporates by reference paragraphs 1-94.

96.     At all relevant times, Plaintiff was an individual with a disability within the meaning of the Persons With Disabilities Civil Rights Act.  Specifically, Plaintiff has a physical or mental impairment that substantially limits one or more of his major life activities, has a record of the impairment, and/or is regarded by Defendant has having the impairment.

97.     Defendant, through its employees, agents, and representatives, denied Plaintiff's request for reasonable accommodations.

98.     Defendant's decision to deny Plaintiff's requests for a reasonable accommodation due to his disability, constitutes discrimination against Plaintiff with respect to the terms, conditions, and/or privileges of employment in violation of the Persons With Disabilities Civil Rights Act.

99.     When Plaintiff returned from medical leave, Defendant, through its employees, agents, and representatives, intentionally discriminated against Plaintiff in the terms and conditions of employment because he is an individual with a disability within the meaning of the Persons With Disabilities Civil Rights Act.

100.     During Plaintiff's employment, Defendant, through its employees, agents, representatives, treated Plaintiff differently from similarly situated non-disabled employees in the terms and conditions of employment because he is an individual with a disability within the meaning of the Persons With Disabilities Civil Rights Act.

101.     Defendant's decision to treat Plaintiff differently from similarly situated non-disabled employees because he has a record of an impairment constitutes discrimination against Plaintiff in respect to the terms, conditions and/or privileges of employment in violation of the Persons With Disabilities Civil Rights Act.

102.     Defendant's decision to treat Plaintiff differently from similarly situated non-disabled employees because Defendant regarded Plaintiff as disabled constitutes discrimination against Plaintiff in respect to the terms, conditions and/or privileges of employment in violation of the Persons With Disabilities Civil Rights Act.

103.     In March 2021, Defendant terminated Plaintiff's employment.

104.   Defendant's decision to terminate Plaintiff because, in part, he has a record of an impairment constitutes discrimination against Plaintiff in respect to the terms, conditions and/or privileges of employment in violation of the Persons With Disabilities Civil Rights Act.

105.   Defendant's decision to terminate Plaintiff because, in part, it regarded Plaintiff as disabled constitutes discrimination against Plaintiff in respect to the terms, conditions and/or privileges of employment in violation of the Persons With Disabilities Civil Rights Act.

106.   The actions of Defendant and its agents, representatives, and employees were intentional in disregard to rights and sensibilities of Plaintiff.

107.   As a direct and proximate result of Defendant's wrongful acts and omissions, Plaintiff has sustained loss of earnings, earning capacity, and fringe benefits and has suffered mental anguish, physical and emotional distress, humiliation and embarrassment.

**COUNT V**
**INTERFERENCE IN VIOLATION OF**
**THE FAMILY MEDICAL LEAVE ACT**

108.   Plaintiff incorporates by reference paragraphs 1-107.

109.   Defendant violated The Family Medical Leave Act when it discriminated against Plaintiff as described regarding the terms, benefits,

conditions, and privileges of his employment by interfering with Plaintiff's right to leave and/or intermittent leave under the Family Medical Leave Act.

110.   As a direct and proximate result of Defendant's wrongful acts and omissions, Plaintiff has sustained loss of earnings, earning capacity, and fringe benefits and has suffered mental anguish, physical and emotional distress, humiliation and embarrassment.

WHEREFORE, Plaintiff Charles Douglas prays that this Honorable Court grant the following remedies:

A.   Declare that the aforementioned practices and actions of Defendant constitute unlawful employment practices in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq*., the Americans With Disabilities Act, as amended, 42 U.S.C. § 12101, *et seq*., the Family Medical Leave Act, 29 U.S.C. § 2601, *et seq.*, the Elliott-Larsen Civil Rights Act, MCL § 37.2101 *et seq*., and the Persons With Disabilities Civil Rights Act, MCL § 37.1201 *et seq.*

B.   Award Plaintiff all lost wages and the value of fringe benefits, past and future, to which he is entitled;

C.   Award Plaintiff compensatory damages;

D.   Award Plaintiff liquidated damages;

E.   Award Plaintiff punitive damages;

F.      Award Plaintiff reasonable attorney's fees, costs, and interest;

G.      Award Plaintiff such other relief as this Court deems just and proper.

<u>*s/*</u>Teresa J. Gorman
Teresa J. Gorman (P61001)
Teresa J. Gorman PLLC
Attorneys for Plaintiff
5700 Crooks Road, Suite 200
Troy, MI 48098
Tel: (248) 763-6943
Fax: (248) 689-3268
terigorman@aol.com

## **<u>JURY DEMAND</u>**

Plaintiff demands a jury trial.

<u>*s/*</u>Teresa J. Gorman
Teresa J. Gorman (P61001)
Teresa J. Gorman PLLC
Attorneys for Plaintiff
5700 Crooks Road, Suite 200
Troy, MI 48098
Tel: (248) 763-6943
Fax: (248) 689-3268
terigorman@aol.com